```
     THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                            CENTRAL DIVISION
```

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| RANEE TADEMY, | ) | Case No. 2:04CV00670 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION AND ORDER ADDRESSING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| UNION PACIFIC CORPORATION, and UNION PACIFIC RAILROAD COMPANY, | ) ) | |
| Defendants. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.  INTRODUCTION

Renee Tademy ("Tademy") sues Defendants for a racially hostile work environment under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981, alleging a series of events that occurred over many years. Tademy is an African-American who was employed as a switchman/brakeman and as a yard conductor by Union Pacific Railroad Company ("UPRR"). The incidents alleged are boorish and regrettable. Nevertheless, for the reasons that follow, as well as generally for those reasons set forth by Defendants in their pleadings and oral argument, the Court concludes that the material facts are not is dispute and that Tademy's hostile work environment claims under Section 1981 and Title VII fail as a matter of law and summary judgment should issue. The Court also concludes that Defendants are entitled to summary judgment on

Tademy's remaining claim for intentional infliction of emotional distress.

## II. FACTS

In support of their motion, Defendants marshal the following facts, which are undisputed by Tademy in any material way. On January 29, 2001 Tademy arrived late for his shift and Manager of Yard Operations David Cagle stated "[w]hat time does this job go to work, boy?". Tademy reported the incident and UPRR investigated and took disciplinary action against Cagle. On June 9, 2001 Tademy filed his First Charge of Discrimination regarding the Cagle comment.

In that First Charge of Discrimination Tademy also identified five other incidents that he considered racial and which he had previously reported to UPRR. First, in 1995 Tademy heard that a co-worker, Shane Marvin, did not like working with "black people". UPRR investigated and obtained a statement from Marvin in which he denied any involvement in so-called racial issues. Second, in 1996 or 1997, Tademy claims that his locker in the Carmen Shanty had the N-word written on it. Tademy removed it and informed Unit Superintendent Scott Wagner. Although Tademy claims that there was no investigation to find out who had written it, such graffiti never appeared on Tademy's locker again. Third, in 1998 or 1999, the N-word was written on

a bathroom wall in the North Shanty.  Tademy reported it to Lyndon Raphael, a black supervisor, who told him it had already been removed.  The graffiti never appeared again at the North Shanty.  Fourth, in 1998 Tademy overheard a conversation between Mark Bleckert, an engineer, and another employee in which Tademy claims Bleckert made a reference to "Kunta Kinte" and Raphael, a black supervisor.  Tademy confronted Bleckert who apologized.  Tademy reported the incident to Raphael.  Tademy claims that Bleckert was never disciplined but there is also no evidence that Bleckert ever did anything racially offensive around Tademy again.  Fifth, in 2000, the N-word was written on a bathroom wall in the Carmen Shanty along with what Tademy described as a "Sambo" caricature.  The graffiti was promptly removed and Supervisor Raphael held meetings with employees in the work area to counsel them about UPRR's EEO policy.  Tademy was issued a Right to Sue letter on August 22, 2002, but he did not file a lawsuit within the required ninety-day period.

Tademy alleges the following additional acts said to have taken place subsequent to his decision not to file a lawsuit.  In 2002, Charlie White, a co-employee, hacked into the railroad's computer system and caused an unauthorized e-mail to be sent from superintendent Scott's e-mail account that noted that Scott was vacationing and said "keep an eye on the slaves ... seriously."  The e-mail was sent to all local UPRR computers, not to Tademy.

Tademy first saw the e-mail sitting on a counter top in the yard office.  He learned that White, not Scott, had sent the e-mail and he didn't report it.  UPRR investigated and disciplined White.  Next, Tademy alleges that in April of 2003, he and another employee, Ryan Puffer who is white, were drug tested three times in one month.  Random drug testing is required under the Federal Railway Administration for employees who work in the operation of trains.  A computerized selection is made on the basis of job positions and shift, not on the basis of individual employee's identities.  The final incident alleged arose on July 1, 2003, when Jan Erickson, an employee on a different shift than Tademy, found an industrial rope with a slip knot tied in it in the rail yard.  Erickson decided he could use the rope to help his son move and placed the rope on a wall clock near one of the South Shanty doors so that he would not forget it.  Erickson who attached no meaning to the rope forgot to take it home.  Tademy saw the rope and characterized it as displayed like a noose.  Tademy reported the incident and UPRR conducted an investigation.  After a disciplinary hearing, Erickson was terminated, but eventually reinstated.  Salt Lake management conducted EEO training in response to the Erickson incident.

   Tademy was supposed to return to work from vacation on August 22, 2003, but reported that he was not able to do so due to problems with his elbow.  He subsequently applied for a

medical disability from the Railroad Retirement Board, which awarded him disability status based on a mental health condition.

On January 26, 2004, Tademy filed a Second Charge of Discrimination, which he later withdrew in favor of pursuing this action.  In his Amended Complaint and in his deposition Tademy refers to additional allegations of racial incidents that span several decades, that he did not report to UPRR, that occurred before 2001, and that were not identified in his First Charge of Discrimination.  *See* Appendix 2 to Defendants' Motion for Summary Judgment.  Tademy also relies on grievances of other employees, but which he did not know about until he was no longer working at UPRR and after this litigation began.[1]  Additionally, Tademy relies on the allegation that Lyndon Raphael, a black manager, reported seeing the phrase "hang all niggers and jews" on a bathroom wall in the North Shanty.  Tademy did not know about the incident, which is alleged to have taken place in 1999, until at least two years later when UPRR disclosed it in response to Tademy's First Charge of Discrimination as part of its explanation that it took prompt and remedial action when it became aware of the incident.

---

[1] Tademy "may only rely on evidence relating to harassment of which [he] was aware during the time [he] was allegedly subjected to a hostile work environment."  *Hirase-Doe v. U. S. West Commuc'ns*, 61 F.3d 777, 782 (10th Cir. 1995),*abrogation on other grounds recognized* by Zisumbo v. McCleodUSA Telecomm. Services, Inc., 154 Fed. Appx. 715 (10th Cir. Nov. 23, 2005)(unpublished).

### III. SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[2]  *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  This burden has two distinct components:  an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party.  *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to

---

[2]Whether a fact is material is determined by looking to relevant substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

summary judgment as a matter of law. *Id.* In considering a motion for summary judgment, the record must be viewed in a light most favorable to the non-moving party. Celotex, 477 U.S. at 322.

## IV.   DISCUSSION

### A. Limitation Periods – Title VII

Before proceeding in federal court under Title VII a party must obtain a Notice of Right to Sue and commence a court action withing ninety days of receiving the notice. *See* 42 U.S.C. § 2000e-5(f)(1); *Witt v. Roadway Exp.*, 136 F.3d 1424, 1429 (10th Cir.), *cert. denied*, 525 U.S. 881 (1998). Tademy received a right to sue letter on the Cagle, Bleckert, Marvin, locker, graffiti, and 2002 e-mail incidents but failed to file a timely court action. Defendants claim that by failing to file a lawsuit within the 90 days, all allegations of harassment included in the charge are waived.

"It is well settled that the 90-day period for filing a civil lawsuit after final disposition of a complaint by the EEOC is a 'requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996)(citation omitted). Tademy makes no argument for waiver, estoppel, or equitable tolling and offers only the desire to work without harassment as the reason why he failed to file his suit

within 90 days after receiving his right to sue letter.

Similarly, as Defendants note, as a prerequisite to federal jurisdiction for a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing a claim with the appropriate administrative agency before proceeding in federal court.  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir. 1997).  Other than as noted, it is undisputed that Tademy failed to exhaust his administrative remedies.

Defendants further contend that even if the 90 day limitations period were ignored, the Court may not consider Tademy's old grievances to support his Title VII hostile work environment claim because they are outside of Title VII's 300 day statute of limitations.  Title VII requires a plaintiff to file a charge of discrimination within 300 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1); *Duncan v. Manager, Dept. of Safety City & County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005).  Because Tademy filed his last Charge of Discrimination on January 26, 2004, the 300 day period expired on April 1, 2003, and allegations arising outside that date are presumed untimely.

Tademy does not dispute the foregoing limitation periods or exhaustion requirement, but contends that under *National R.R.*

*Passenger Corp. v Morgan*, 536 U.S. 101 (2002), the Court may consider all of his allegations supporting his hostile work environment claim. *Morgan* clarified the appropriate limitations analysis. First, the *Morgan* Court instructed that "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period ...". *Morgan*, 536 U.S. at 122. In contrast, because a hostile work environment claim often consists of a series of incidents that may extend beyond 300 days, the *Morgan* Court held that such a claim "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Id. "*Morgan* emphasizes that there must be a relationship between the acts alleged after the beginning of the filing period and the acts alleged before the filing period ...". *Duncan*, 397 F.3d at 1308. *Morgan* also expressly states that neither of it's holdings "precludes a court from applying equitable doctrines that may toll or limit the time period." *Morgan*, 536 U.S. at 122. "To determine whether [older alleged] acts are part of the same hostile work environment, *Morgan* advises looking at the type of these acts, the frequency of the acts, and the perpetrator of the acts." *Duncan*, 397 F.3d at 1309.

The Court rejects Tademy's argument that because the

Erickson noose is within Title VII's 300 days limitation period, under *Morgan*, all of the acts he alleges should be considered as part of the same hostile work environment.  Tademy's allegations consist of the following reported incidents over the last decade: one 1995 hearsay incident involving something a co-worker, Marvin, allegedly said to a third party; three incidents of racial  graffiti in a four year period between 1996 and 2000; one 1998 overheard conversation in which one employee in a conversation with another employee made a reference to "Kunta Kinte" and a black supervisor; one 2001 remark made after Tademy's tardy arrival, which asked, "What time does this job go to work, boy?";  one 2002 e-mail, not directed at Tademy and of tenuous racial implication; and, finally, Tademy's timely 2003 incident involving a rope perceived by him to be a noose.  As to the 2003 random drug tests, there is no evidence that they have any connection to race, and as discussed later, those incidents are not actionable.  Applying the *Duncan/Morgan* analysis suggests that Plaintiff's reported incidents are outside the 300 day period and cannot be considered as part of the same hostile environment claim.  There is no evidence that the acts were perpetrated by the same employee and the Court is of the opinion that a jury could not rationally conclude that the acts occurred with relative frequency given the time period involved, or that they were all of the same type such that they collectively constitute one unlawful employment practice.

Applying the *Morgan/Duncan* analysis to Tademy's other allegations of harassment, which span several decades of employment with UPRR, and which were never reported to UPRR,[3] the Court is left with a similar conclusion. There is no evidence that those acts were perpetrated by the same employees and the Court, likewise, concludes that a jury could not rationally find, given the time period involved, that those acts occurred with relative frequency, or that they were sufficiently of the same type to be collectively considered one unlawful employment practice.

To allow litigation over long ago actions, taken by different individuals would frustrate the policy of having a deadline for filing Title VII claims. *See Duncan*, 397 F.3d at 1309 (noting in that case that "eighteen years separate the initial allegations from the filing period acts. To permit litigation now over these actions, which were taken by different individuals so long ago under different circumstances, would frustrate the Congressional purpose in passing a tight deadline for filing Title VII claims.").

Even if acts outside the filing period were found to be related, such that could be considered as part of the same claim as those inside the filing period, they are not considered part

---

[3] *See* Appendix 2 to Defendants' Motion for Summary Judgment.

of the same hostile work environment if there was intervening remedial action by the employer.  *See Morgan*, 536 U.S. at 118.  The Court agrees with UPRR, as outlined in its pleadings, that its intervening action disqualifies those acts from being considered as part of Tademy's timely filed claims.

In summary, the Court agrees with Defendants that all but two of Plaintiff's allegations supporting his Title VII claim are barred by relevant statutes of limitation.  After separating Tademy's timely claims from his untimely claims, the random drug tests and the Erickson "noose" incident are Tademy's only timely allegations in support of his Title VII claim.

### B.  Limitations Period – Section 1981

The Court also agrees with Defendants that  all but four of Plaintiff's allegations supporting his Section 1981 claim are barred by the four-year statute of limitations contained in 28 U.S.C. § 1658(a).  Unlike Title VII, in this circuit there is no exception applicable to Section 1981 for considering otherwise untimely claims under the *Morgan/Duncan* analysis. *See  Harris v. Allstate Ins. Co.*, 300 F.3d 1183, 1193 n2 (10th Cir. 2002); *Thomas v. Denny's, Inc*. 111 F.3d 1506, 1513-14 (10th Cir.), *cert. denied*, 522 U.S. 1028 (1997); *Ware v. Union Pacific R.R. Co. Omaha*, 278 F. Supp. 2d 1263, 1267-68 (D. Kan. 2003).  Tademy's reliance on dicta in *Mitchell v. City & County of Denver*, 112 Fed. Appx. 662-

671 (10th Cir. Oct. 12, 2004)(unpublished), for a contrary proposition is unpersuasive and not binding precedent. *See* 10th Cir. R. 36.3. Even if the Court were to apply the *Morgan/Duncan* analysis to Tademy's Section 1981 claim, those incidents outside the limitations period would not be considered for the same reasons discussed above under Title VII.

After separating Tademy's timely claims from his untimely claims, the Erickson noose incident, the random drug tests, the 2002 "slaves" e-mail, and the Cagle "boy" incident are the only timely allegations in support of his Section 1981 claim.

**C. Title VII and Section 1981 Claims Fail**

The Court agrees with Defendants that none of the timely incidents Tademy asserts in support of either his Title VII claim or his Section 1981 claim meet the requirements for a sustainable hostile work environment claim. The elements of a hostile work environment claim "under § 1981 are the same as those under Title VII." *Aramburu*, 112 F.3d at 1410 (citation omitted). For both his Title VII and Section 1981 claims Tademy must show "'under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" *Witt*, 136 F.3d at 1432 (citation omitted). "General harassment if not racial ... is not

actionable.  The Plaintiff must show more than a few isolated incidents of racial enmity." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)(citation omitted), *cert. denied*, 515 U.S. 826 (1995).  "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Id*.  The alleged harassment must be both objectively and subjectively offensive in order to survive judgment.  *Witt*, 136 F.3d at 1432-33.

Because the random drug tests cannot be construed to be racial, they are not actionable.  There is simply no evidence that the random drug tests were racial or stemmed from racial animus.  The un-controverted evidence is that random drug testing is required for employees who work in the operation of trains and that those to be tested are selected by computer on the basis of job positions and shift, not on the basis of individual employee identification.  It is undisputed that the drug testing impacted Tadmey and his white coworker the same.

Considering the remaining allegations, an off-hand "boy" remark in 2001, an e-mail in 2002 which was not sent to Plaintiff but to everyone, and a rope Plaintiff interpreted as a noose in 2003, the Court finds that a jury could not rationally conclude that those acts were so pervasive or severe so as to alter the terms, conditions, or privilege of Tademy's employment.

For the reasons outlined by Defendants, the Court further agrees with them that even if the timely filed claims did constitute actionable harassment, Plaintiff cannot show employer liability.

### D.  Intentional Infliction of Emotional Distress

Finally, for each of the various and alternative reasons offered by Defendants, the Court concludes that Tademy's Intentional Infliction of Emotional Distress Claim fails as a matter of law and that Defendants are entitled to Summary Judgment.

### V.  CONCLUSION

For the reasons stated as well as generally for the reasons outlined by Defendants in the pleadings, IT IS ORDERED that the Motion for Summary Judgment of Defendants Union Pacific Corporation and Union Pacific Railroad Company is granted.

The Clerk of the Court is directed to enter final judgment accordingly.

DATED this 10th day of February, 2006.

BY THE COURT:

*David Sam*

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT

Case 2:04-cv-00670-CW   Document 156   Filed 02/10/06   Page 16 of 16